CHARLES KOCK, PLAINTIFF IN ERROR, *v.* LOUIS EMMERLING.

Where an agent was employed to sell an estate in Louisiana, and the owner refused, without sufficient reasons, to fulfil an agreement which the agent had made, a right to demand compensation accrued to the agent, the amount of which is to be settled by established usage.

THIS case was brought up by writ of error from the Circuit Court of the United States for the eastern district of Louisiana.

The facts are stated in the opinion of the court.

It was submitted on printed argument by *Mr. Pike* for the

plaintiff in error, and argued by *Mr. Benjamin* for the defendant.

*Mr. Pike* contended, that neither by the common law nor by the law of Louisiana was the broker entitled to any commission.

On the subject of the common law, he cited the cases of Broad *v.* Thomas, 7 Bing., 99, and Read *v.* Rann, 10 Barn. and Cress., 438.

On the subject of the law of Louisiana, he cited many authorities from the civil law, and the case of De Santos *v.* Taney, decided in November, 1857. With respect to this latter case, he said :

In De Santos *v.* Taney, in November, 1857, the very question in this case came before the same court. In that case, a real estate broker, employed to find a purchaser for a house, had done so. The price and terms were agreed to and settled, and accepted by the defendant in writing. The bill of sale was drawn and ready, when a dispute arose as to who should pay certain taxes, and the matter was broken off. The court affirmed the decision in Blanc *v.* the Improvement and Banking Co., and Didion & Duralde; and said that, in all the cases relied on by the broker, the contract was consummated, though, through bad faith towards the broker on the part of his principal, it had been suspended, and apparently abandoned.

The court said, "Negotiations for sales through brokers, interrupted and broken off at every stage of progress to completion, are of daily occurrence. But all the authorities confirm the doctrine of Judge Martin, as we understand it, *that no brokerage is due until the sale is complete and executed; that is to say, until the consideration of the sale has passed to the vendor.*"

Thus it is settled, by the legitimate interpreter of the law of Louisiana, as the law of that State under its code, that, as is the law in England, the broker, if paid at all, is paid by way of commissions—*i. e.,* by a per centage upon the money actually received on a completed sale; and that if there be no sale he is entitled to nothing.

*Kock* v. *Emmerling.*

And this is a reasonable doctrine. The compensation in case of success is very large; and, in fixing it so high, all the uncertainties and difficulties to be anticipated in completing a sale, whether arising from the whims and caprices of the parties, or from any other cause, may well be regarded as taken into consideration. The broker's implied contract is, in effect, an *aleatory* one. For the chance of a large reward, he risks his labor and trouble. He takes the chances of success, and must be supposed to have considered the caprice, even, of each party, as an element of the calculation. And a plain reason for this is, that it would be, in almost every case, impossible to prove that *mere* caprice broke off the negotiation. As he has no legal right to force a party to conclude a sale or purchase, that he may have his fee, so he has no right to insist on knowing the reason which caused the refusal to proceed, any more than if he were a marriage broker. In this case, as in that of a marriage not effected, he must, to recover, establish a proposition he *cannot* establish, to wit: that the parties refusing to proceed did so for an insufficient reason.

It is not shown in this case that he incurred any expenses or made any outlay. The suit is for his commissions, and the judgment allowing him such commissions is surely erroneous.

Mr. *Benjamin* said:

This case is a very simple one. Emmerling, a real estate broker, was employed by Kock to find a purchaser for his plantation at the price of $250,000. A purchaser was found by the broker, with whom the bargain was made by Kock at the price fixed by himself. After making a verbal agreement for the sale, Kock changed his mind, and refused to sell. The question is, whether he can lawfully refuse to pay his broker the commission earned, on the ground that the sale was not actually effected, when it was his own act that prevented the accomplishment of the sale.

The judge below decided rightly that the commissions were due.

C. C., 2035.

Righter *v.* Aleman, 4 Rob., 45.

*Kock* v. *Emmerling.*

Wells *v.* Smith, 3 La. Rep., 501.
Levistones *v.* Landreaux, 6 Annual, 26.
Lestrade *v.* Perrera, 6 Annual, 398.
McGavock *v.* Woodlief, 20 How., 221.

Mr. Justice McLEAN delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the eastern district of Louisiana.

An action was brought by Emmerling, an alien, against Kock, a citizen of Louisiana, for the sum of five thousand dollars, on the purchase and sale of real estate.

Emmerling, it seems, being a broker, and engaged in the purchase and sale of real property, was employed by Kock to sell a certain plantation on the Bayou Lafourche, known as the Letory place, and by his written instructions, the 2d April, 1857, was authorized to sell this plantation above named at two hundred and fifty thousand dollars, payable one-fifth cash, and the remainder in four equal instalments, bearing eight per cent. interest.

The petitioner, it is alleged, after visiting the plantation at various times, and with different persons, finally, on the 19th of April, 1857, made an agreement with Jacob Denny, a resident of Louisiana, to purchase the plantation at the price fixed, provided the said Kock would so change the terms of payment as to receive forty thousand dollars in cash, and the remainder in six annual instalments, bearing seven per cent. interest.

Kock consented to the terms, and the 29th April he and Denny met at New Orleans to complete the contract. Kock insisted that for the first year's credit a good acceptance for thirty thousand dollars should be given, and agreeing, if this were done, the five thousand dollars remaining on the first term should be equally divided among the other five terms, so that the first year's payment should be thirty thousand dollars, and the other five credit terms should be thirty-six thousand dollars each. And he agreed to take as satisfactory the acceptance of Messrs. Fellows & Co., or Messrs. Lavoe & McColl, commission merchants, of New Orleans. Messrs. Fellows

& Co. agreed to accept for the thirty thousand dollars, and Denny offered to advance the forty thousand dollars, and in every other respect to carry out and complete the proposed contract. But Kock refused to comply with his agreement, capriciously, as it would seem, as he assigned no reason for his refusal, except that he was going to Europe on a visit with his family, and had no time to execute the title papers. Denny proposed to provide for the payments, and receive the title on his return, but he refused to sell the plantation.

The petitioner alleged that the contract was fully executed on his part, and on the part of Denny; and he claims a recompense for the service in which he was engaged, at the rate of two per cent. on two hundred and fifty thousand dollars, making the sum of five thousand dollars, said per centage being the usual established rate of broker's commission on the sales of plantations.

The defendant denies the allegations of the bill in the Circuit Court.

A judgment was entered in the Circuit Court for the sum claimed by the petitioner; from which judgment the defendant has appealed to this court.

In his statement of facts, the district judge says: "It is established by the proof that the price of the plantation was two hundred and fifty thousand dollars, and the rate of commissions of brokers on sales of plantations was two per cent." This is the ordinary mode of bringing before this court a writ of error on a statement of facts in Louisiana by the district judge. McGavock *v.* Woodlief, 20 How., 225.

There would seem to be no doubt on the merits of this case. The terms of the contract as to the sale were specific and unmistakable, and everything was done that could be done by the purchaser to carry out the contract; but the vendor, without any reason, refused to complete it.

The broad ground is assumed, that no contract of this character can be specifically enforced, unless it has been fully executed.

In the case of McGavock, above cited, the court say: "The terms of the sale, as given by the vendor to the plaintiff, the

broker, were simple and specific, &c., and Long, the purchaser, agreed to these terms, as averred in the petition, and not questioned in the case; and if he had offered, and was in a condition to consummate the agreement according to its terms, no doubt the commission would have been earned, and the recovery below right." But a change was proposed by Long, which prevented the arrangement.

Civil Code, 2035, declares, "The condition is considered as fulfilled, when the fulfilment of it has been prevented by the party bound to perform it." In addition to this, the following authorities have been cited: Righter *v.* Alamon, 4 Rob., 45; Wells *v.* Smith, 3 La. Rep., 501; Levistones *v.* Landreaux, 6 Annual, 26; Lestrade *v.* Perrera, 6 Annual, 398.

It is not perceived why a contract to sell property, real or personal, on commission, should not be governed by the same rules as other sales. If a usage has been established in Louisiana, as seems to be the case, for the sales of plantations, such usage, being reasonable, should govern in the absence of a special agreement.

Nothing is more common in our large cities than to charge brokerage for procuring the loan of money. This varies as the money market rises or falls. One per cent., and sometimes two, is charged for this service. The same rule applies as to the sale of property. Where the contract is fair, it is not perceived why such compensation should not be paid, as agreed by the parties, or by an established usage.

Where the vendor is satisfied with the terms, made by himself, through the broker, to the purchaser, and no solid objection can be stated, in any form, to the contract, it would seem to be clear that the commission of the agent was due, and ought to be paid. It would be a novel principle if the vendor might capriciously defeat his own contract with his agent by refusing to pay him when he had done all that he was bound to do. The agent might well undertake to procure the purchaser; but this being done, his labor and expense could not avail him, as he could not coerce a willingness to pay the commission which the vendor had agreed to pay. Such a state of things could only arise from an express under-

standing that the vendor was to pay nothing, unless he should choose to make the sale.

The judgment of the Circuit Court is affirmed.

Mr. Justice CATRON and Mr. Justice GRIER dissented.