GLADNEY, Judge.
Jules A. Malarcher, Jr., instituted this suit to recover $1,370.78 due as a commission on the sale of filing equipment to Ru-benstein Bros., Inc., of Shreveport, Louisiana.
It is alleged that plaintiff and Fred A. Nackley, principal stockholder and executive officer of Caddo Office Supplies, Inc., entered into an oral agreement wherein Nackley agreed to pay a ‘ commission of twenty-five per cent (25%) of the sales price of certain Diebold filing equipment to be included in a sale of a system of cycle billing filing equipment and machines; that pursuant to this agreement plaintiff proceeded to prepare and submit a written proposal for the sale of this equipment to Ru-benstein Bros., Inc., and as a result thereof the prospect did buy the Diebold supplies, *581 but did not buy the machines or other equipment. It is further represented that although petitioner brought about the sale, the order therefor was actually taken by the defendant Nackley for Caddo Office Supplies, Inc., and petitioner has been deprived of his commission on the sale.
Fred A. Nackley and Caddo Office Supplies, Inc., made joint defendants herein, filed a plea of vagueness which was overruled, and then answered by way of general denial. Respondents also filed an exception of no cause or right of action which was likewise overruled. After trial judgment went against both defendants but on rehearing the claim against Nackley was dismissed and he is no longer a party litigant. Judgment was rendered in favor of plaintiff in the sum of $1,218.25. It is from this decree Caddo Office Supplies, Inc., has prosecuted its appeal.
The oral contract upon which plaintiff rests his action came about at a conference participated in by Nackley, J. W. Malarcher and Jules A. Malarcher, Jr., and was held December 18, 1952, at the place of business of Caddo Office Supplies, Inc. Seated near by but not close enough to hear the discussion taking place was J. N. Fisher, an employee of the Caddo Office Supplies, Inc. The two Malarchers had called upon Nack-ley to obtain his permission for including the Diebold supplies with Underwood-Sundstrand machines in a proposal which Jules A. Malarcher, Jr., would present to Rubenstein Bros., Inc. Caddo Office Supplies, Inc., was the exclusive Diebold agency, and a partnership composed of J. W, Malarcher and J. Hart Malarcher, using the trade name Caddo Business Machines, had the franchise to sell Underwood-Sundstrand office machines. Jules A. Malarcher, Jr., was a salesman for the- partnership. By making such a package offer to the prospective purchaser it was believed by Jules A. Malarcher, Jr., it would increase.his chances of selling the Underwood-Sundstrand machines. We infer that Malarcher thought Mr. Saul - Rubenstein with whom he had to deal was at that time interested in the Diebold equipment. At the conference Nackley agreed to allow twenty-five per cent (25%) as an. inducement for handling the Diebold supplies. There is disagreement as to whether this was a commission or a business discount. Nackley claims that the twenty-five per- cent (25%) was offered as a discount to Caddo Business Machines and was not offered as a commission to Jules A. Malarcher, Jr. In his testimony Nackley further declares that the twenty-five per cent (25%) was contingent upon the sale of the Diebold supplies as a “package” with the 'Underwood-Sundstrand machines. Both Jules. A. Malarcher, Jr., and J. W. Malarcher deny that the twenty-five per cent (25%) represented a discount and also deny that the twenty-five per cent (25%) was conditioned upon the sale of the Underwood-Sundstrand machines.
During the conference aforesaid, Jules A. Malarcher, Jr., stated the urgency of his calling upon J. Henry Thompson of Die-bold, Inc., at Dallas, Texas, for the purpose of refreshing his knowledge of Diebold supplies so he could make a better presentation to Mr. Rubenstein. Mr. Nackley thereupon caused Mr. J. N. Fisher, his store manager, to address the following letter to the attention of Mr. Thompson:
“Diebold, Inc.
2016 Main
Dallas, Texas
“Attn: Mr. J. Henry Thompson “Dear Mr. Thompson:
“This will introduce Mr. Jules Malarcher, who is working with us on the cycle billing set up for Rubenstein Bros, of this city.
“We would appreciate anything that you might to do help Mr. Malarcher to secure this nice order that he is handling for us.
“Yours very truly,
J. N. Fisher
Caddo Office Supplies, Inc.”
Nackley agreed the transaction would be left entirely to Jules A. Malarcher, Jr., and that he, Nackley, would see to it that Mr. Wright, a salesman for Caddo Office Supplies, Inc., would not .interfere. Malarcher immediátely thereafter called upon Diebold, Inc., at Dallas, and prepared a detailed written proposal or offer to -sell covering all details and-'specifications relating to the cycle *582 billing set up. This offer was presented to Mr. Saul Rubenstein. It permitted Ruben-stein Bros., Inc., to purchase Diebold office supplies only or the Underwood-Sundstrand business machines without Diebold supplies, or the combination. After consideration of the offer during the early part of January, 1953, Rubenstein Bros., Inc., gave an order to Caddo Office Supplies, Inc., for the Die-bold equipment, the order being for that exactly described as in the proposal that was given to Mr. Saul Rubenstein by Jules A. Malarcher, Jr. At the same time Mr. Ru-benstein rejected the proposal insofar as it related to the Underwood-Sundstrand equipment.
The record shows that from this time forward Fred A. Nackley or his company, Caddo Office Supplies, Inc., proceeded to' handle the performance of the contract without assistance from Jules A. Malarcher, Jr., or Caddo Business Machines. Neither was requested by Nackley to install the Die-bold' equipment or do anything else. Defendant took over completely and thereby prevented further performance by plaintiff. Further performance by plaintiff must be considered as fulfilled under Article 2040 of the LSA-Civil Code, which provides:
“The condition is considered as fulfilled, when the fulfillment of it has •been prevented by the party bound to perform it.”
In the case of Kock v. Emmerling, 1859, 22 How. 69, 63 U.S. 69, 16 L.Ed. 292, the court said:
“Where the vendor is satisfied with the terms, made by himself, through the broker, to the purchaser, and no solid objection can be stated, in any form, to the contract, it would seem to be clear .that the commission of the agent was due, and ought to be paid. It would be a novel principle if the vendor might capriciously defeat his own contract with his agent by refusing to pay him when he had done all that he was bound to do.- The agent' might well undertake to procure the purchaser; but this being done, his labor and expense could not avail him, as he could not coerce a willingness to pay the commission which the vendor had agreed to pay. Such a state of things could only arise from an express understanding that the vendor was to pay nothing, unless he should choose to make the sale.”
It was incumbent upon Nackley as the principal involved to have had an express understanding with Malarcher that Caddo Office Supplies, Inc., was to pay nothing unless the sale was completed as a package transaction. Such a stipulation is wholly missing and the condition relied upon by defendant has not been established to our satisfaction. We are left, therefore, to follow the admonition of Article 1965 of the LSA-Civil Code:
“The equity intended by this rule is founded in the Christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity.”
The record clearly establishes the existence of an oral contract in which the Caddo Office Supplies, Inc., acting through Fred A. Nackley expressly agreed to allow the payment of a commission of twenty-five per cent (25%) to Jules A. Malarcher, Jr., or a discount of twenty-five per cent (25%) from the sales price in favor of Caddo Business Machines. The contract also obligated Jules A. Malarcher, Jr., or Caddo Business Machines to take care of all expenses in connection with the sale and installation of the merchandise sold. Witnesses uniformly testified the extra percentage allowed, being twenty-five per cent (25%) over the usual fifteen per cent (15%), was for that purpose. It, therefore, follows Caddo Office Supplies, Inc., can not be prejudiced irrespective of whether the twenty-five per cent (25%) be labeled a commission or a business discount.
*583 The judgment of the court a quo charged plaintiff, and we think correctly, with the amount of freight paid by Caddo Office Supplies, Inc., amounting to the sum of |152.53. We find defendant prevented plaintiff or the Caddo Business Machines from making the installation and, therefore, forfeited its right to claim reimbursement for any expenses it may have incurred in installation. J. W. Malarcher testified the transaction was one handled entirely by Jules A. Malarcher, Jr., with the permission of and without objection from Caddo Business Machines. The reason for this obviously was because Jules A. Malarcher, Jr., was endeavoring to sell the Underwood-Sundstrand machines by tacking on to his proposed sale the Diebold products believing that such a step would increase the opportunity to sell his employer’s merchandise.
By way of defense, counsel raise several contentions which require only passing comment, namely: that Nackley was not consulted about trade-in allowances; that twenty-five per cent (25%) is an unusual salesman’s commission; that plaintiff did not claim a commission until some time after the order was taken; and that defendant had practically no profit in the transaction. A careful review of the arguments advanced upon these propositions fails to convince us they can have any effect upon the legal issues herein involved. The record is convincing that defendant left the sale of the Diebold products entirely in the hands of the plaintiff, Jules A. Malarcher, Jr., whom he promised to pay twenty-five per cent (25%) of the sales price of the Diebold filing equipment if sold to Ruben-stein Bros., Inc. That a definite agreement was entered into and a sale was made consistent with the terms of the oral agreement is established. While it must be conceded the agent did not entirely perform all of the conditions agreed upon, he was prevented from doing so only because of the intervention of the defendant. It therefore follows, in our opinion, that plaintiff has made out his case. We are also of the opinion that the amount allowed in the judgment from which appealed is correct. Counsel for plaintiff in brief states:
“Malarcher’s recovery should be 25% of the amount of the sale, less sales tax, of $1,397.26, but, not having the exact amount of the invoice prior to the trial, his petition claimed only $1,370.78, being 25% of the prices proposed to Rubenstein’s by him. The difference arose in the cost of the cards to be used with the filing equipment.”
For the foregoing reasons the judgment from which appealed is affirmed at appellant’s cost.